AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br><br>JAEL WATTS,<br><br>Defendant. | )<br>)<br>) Case No. 1:25-MJ-211 (DJS)<br>)<br>)<br>)<br>)<br>)<br>) |

U.S. DISTRICT COURT - N.D. OF N.Y.
**FILED**
JUL 1 8 2025
AT_____O'CLOCK_____
John M. Domurad, Clerk - Albany

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

Between on or about the dates of December 19, 2023 and July 18, 2025, in the county of Albany in the Northern District of New York, and elsewhere, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1343 | Wire fraud |

This criminal complaint is based on these facts:
Please see attached affidavit.

☒  Continued on the attached sheet.

_____
*Complainant's signature*
USDOT-OIG Special Agent Todd Collins
_____
*Printed name and title*

Attested to by the affiant in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Date: July 18, 2025

_____
*Judge's signature*

City and State: Albany, New York    Hon. Daniel J. Stewart, U.S. Magistrate Judge
_____
*Printed name and title*

U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
JUL 1 8 2025
AT____ O'CLOCK____
John M. Domurad, Clerk - Albany

### Affidavit in Support of a Criminal Complaint

Special Agent Todd Collins, of the United States Department of Transportation, Office of Inspector General (USDOT-OIG), being duly sworn, deposes and states:

### Introduction

1. I respectfully make this affidavit in support of a criminal complaint charging Jael Watts with wire fraud committed in violation of 18 U.S.C. § 1343.

2. I have worked as a Special Agent for the USDOT-OIG since 2014. During my time as a Special Agent, I have investigated offenses involving identity theft, mail fraud, wire fraud, false statements, and conspiracy.

3. The facts in this affidavit come from my personal observations, my training and experience, my and others' analysis of various categories of records and information, and information obtained from other law enforcement officers, investigators and witnesses, including employees of the Office of the New York State Comptroller. The information contained in this affidavit is not an exhaustive account of everything I know about Watts or everything I have learned in this investigation. Rather, it contains only the facts that I believe are necessary to establish probable cause in support of a criminal complaint. Where statements of others are related in this affidavit, they are related in substance and in part.

### Basis for a Probable Cause Finding

### Summary

4. This request for a criminal complaint arises from an ongoing investigation into a fraud scheme perpetrated by Watts and her company Pearl Transit, against the State of New York. As explained below, Watts has electronically submitted false and fraudulent documents via email and New York State document transfer systems to the New York State Department of

1

Transportation (NYSDOT) and the New York State Office of the State Comptroller (NYSOSC), in Albany, New York, seeking to be paid hundreds of thousands of dollars in federal funding. The documents submitted by Watts and Pearl Transit purport to show that Pearl Transit was transporting disabled and/or elderly residents of Nassau and/or Suffolk Counties in the State of New York; in fact, there is no proof that the company has transported any such people, and the documentation provided is false and fraudulent. As part of the fraudulent scheme, Watts and Pearl Transit also submitted false banking records purporting to show payments to Pearl Transit employees.

**Background**

5. The Federal Transit Administration (FTA) is part of the U.S. Department of Transportation (USDOT). The FTA's Section 5310 program, codified at 49 U.S.C. § 5310, provides formula funding to states and designated recipients to meet the transportation needs of older adults and people with disabilities when a needed transportation service is otherwise not available, insufficient, or inappropriate. Funds are apportioned based on each state's share of the population for these two groups. Formula funds are apportioned to direct recipients; for rural and small urban areas in New York State, the recipient is NYSDOT, while in large urban areas, a designated recipient is chosen by the Governor. The selection process for the vendors chosen by the state may be formula-based, competitive or discretionary, and the vendors can include states or local government authorities, private non-profit organizations, and operators of public transportation.

6. The New York State Office of General Services' (NYSOGS) Business Service Center (BSC) hosts accounts payable processes for various state agencies, including NYSDOT. A vendor, seeking payment from the state, sends the application to the BSC, either in paper form,

email or the Statewide Financial System (SFS). The BSC take the application and once approved enters an electronic voucher into the SFS and routes the electronic voucher to the agency, in this case NYSDOT, to confirm the invoice is appropriate to pay. Assuming it is, the electronic application is turned into a voucher into the SFS and the BSC submits the voucher to NYSOSC for audit and payment.

7. Pearl Transit is a not-for-profit company, established in 2005, that has received tax-exempt status from the Internal Revenue Service (IRS). According to Pearl Transit's website (www.pearltransit.org, last visited July 14, 2025), the company provides transit management, street outreach and food insecurity support services. On February 18, 2025, during a recorded telephone call with NYSOSC, Watts stated that Pearl Transit provides transportation to the elderly and disabled in North Carolina, Georgia, Florida, Michigan, Tennessee, Indiana, and California. In Pearl Transit's application for a federally funded contract, submitted to NYSDOT on or about March 20, 2022, Watts claimed that Pearl Transit in 2021 provided millions of rides to seniors, riders with disabilities and low-income people, and provided transportation services in Putnam, Rockland, Suffolk and Westchester Counties; and had 86 staff members dedicated to transportation services and total operating expenses of $1,490,644.

8. On or about December 19, 2023, Pearl Transit, with principal offices located at 777 Westchester Avenue, Suite 101, White Plains, New York, entered into contract number C005827 with NYSDOT (hereinafter, "the Contract"). The Contract was signed by Watts and approved by NYSDOT on or about February 13, 2024, and approved by NYSOSC on or about August 29, 2024. The Contract covered the period January 1, 2022, to December 31, 2027[1], as a federal-aid project

---

[1] A company can enter into a contract that permits reimbursement for transportation services that have already been provided.

3

under Section 5310, Enhanced Mobility of Seniors and Individuals with Disabilities. The Contract had an estimated project cost of $1,275,550 with a federal share of $745,322.

## Summary of the Fraudulent Scheme

9. As set forth below, there is probable cause to conclude that Watts is seeking hundreds of thousands of dollars from New York State for transportation services that her company, Pearl Transit, has never provided.

10. **Application #1**. On or about October 2, 2024, Pearl Transit submitted to NYSOGS a payment application (hereinafter, "Application #1")[2] requesting, from New York State, reimbursement in the amount of $382,323.59 in federal funds. Application #1 appears to be signed by Watts in typed format. The reporting period covered by Application #1 is January 1, 2023, to March 31, 2023. (Investigators believe that the reporting period should have been January 1, 2022, to March 31, 2022, and 2023 was entered by mistake, because all of the supporting documents show rides that purportedly occurred in 2022. The supporting documentation eventually provided by Pearl Transit shows driver payroll expenses during the period of January 1, 2022, to March 31, 2022.) On or about October 18, 2024, the NYSOGS entered a voucher (hereinafter, "Voucher #1") for payment into the SFS and subsequently sent it to NYSOSC for review and approval. Upon submission of Voucher #1 to the NYSOSC for audit, the voucher was returned back to the NYSOGS on or about October 23, 2024, due to lack of backup documentation.

11. On or about November 1, 2024, Application #1 was resubmitted to the NYSOGS for payment. The reimbursement amounts requested did not change between the October and November submissions. Application #1 appeared to be signed by Watts in handwritten form. The reporting period covered January 1, 2023, to March 31, 2023. Pearl Transit added documents

---

[2] This application was initially emailed to NYSDOT for approval on September 10, 2024.

4

purporting to show direct deposits to employees with "Direct Deposit Issued" pay receipts. All documents for this submission show drivers getting paid for the period of January 8, 2022, to March 31, 2022, with the exception of specific typos that will be explained below. The "Direct Deposit Issued" documents do not show any banking information or withholdings such as taxes or Social Security.

12.   In addition to the "Direct Deposit Issued" documents, Pearl Transit provided a 233-page "Timesheet Report" listing each driver, and the dates and times of the rides they purportedly provided, among other details. Because this report was to support Application #1, almost all rides were during the first quarter of 2022. However, there were several lines of data that have what appear to be a typo and show rides in 2015.

13.   New York State has not paid any money to Pearl Transit with respect to Application #1.

14.   **Application #2.** On or about October 2, 2024, Pearl Transit submitted to NYSOGS a payment application (hereinafter, "Application #2") requesting, from New York State, reimbursement in the amount of $285,942.53 in federal funds. Application #2 appeared to be signed by Watts in typed format. The reporting period covered by Application #2 is April 1, 2022, to June 30, 2022. On October 18, 2024, the NYSOGS entered a voucher (hereinafter, "Voucher #2") for payment into the SFS and subsequently sent it to NYSOSC for review and approval. Upon submission of Voucher #2 to the NYSOSC for audit, the voucher was returned back to the NYSOGS on October 23, 2024, due to lack of backup documentation.

15.   New York State has not paid any money to Pearl Transit with respect to Application #2.

16. **Audit of Voucher #1.** In response to the resubmission of Application #1, on or about November 1, 2024, NYSOSC began a review of Voucher #1 on or about November 7, 2024, requesting more backup documentation from Pearl Transit and eventually had several discussions with Watts.

17. On or about February 18, 2025, an individual who identified themselves as Watts had a phone call with an investigator and an audit staff member from NYSOSC; the phone call was recorded. In sum and substance, the following information was relayed by Watts:

    a. Pearl Transit conducts transportation for elderly and disabled people who cannot access public transit. Pearl Transit has more than 100 employees in 12 states, including 35 employees in New York State. There are around 20 principals and managers at Pearl Transit. There is a board of directors with 12 members.

    b. Pearl Transit works on a ride-share model and drivers are paid as contractors. Watts stated on the call that employees were paid by direct deposit or by prepaid debit card and Pearl Transit's payroll system is Direct Pay.

    c. Pearl Transit banks at Wells Fargo and payroll was paid out of Wells Fargo. Pearl Transit has several bank accounts and Pearl Transit uses different accounts for different states.

18. Direct Pay has disclosed to investigators that Pearl Transit is not a client.

19. A review of Wells Fargo accounts for the period of February 17, 2021, to April 30, 2024, in Watts' and Pearl Transit's names, shows no payroll payments. A review of these accounts' transaction history, for the period of February 17, 2021, to April 30, 2024, shows approximately 4,750 debt transactions totaling approximately $2,617,959.59. The vast majority of the transactions seems to be of a personal nature such as for clothing, travel and other personal

expenses. Very few transactions could be considered business expenses of a rideshare service provider.

20.    Following the call on February 18, 2025, and at the request of NYSOSC for documents supporting Pearl Transit's payroll, Watts provided a Bancolombia bank statement written in Spanish and showing withdrawals to individuals in foreign currency. Bancolombia appears to be a bank headquartered in Medellin, Columbia. After Pearl Transit disclosed the identities of some of its purported employees to NYSOSC, investigators were able to obtain one of those purported employee's bank statements. That purported employee's bank statements show no international deposits nor any deposits from Pearl Transit.

21.    Watts told NYSOSC she works out of Pearl Transit's main corporate office located at Route 73, Suite 104, North Marlton, New Jersey. An internet search revealed that this is a virtual office space (virtual office spaces provide businesses with a mailing address and other services like phone answering, without the need for the business to maintain an actual physical presence at the space). An investigator conducted a site visit and observed an electronic display listing the companies that utilize the space; Pearl Transit was not listed.

22.    Watts also indicated that the New York office for Pearl Transit is 777 Westchester Ave. Suite 101, White Plains, New York.[3] An internet search indicates that this is virtual office space as well. An investigator conducted a site visit and attempted to make contact with suite 101, but there was no response from the office suite. Additionally, there was no signage indicating Pearl Transit was operating a business out of the location.

---

[3] The Contract also lists 777 Westchester Ave, Suite 101, White Plains, NY, as the principal office of Pearl Transit.

7

23. Following the call on February 18, 2025, Watts provided NYSOSC with an insurance policy for contracted staff vehicles. The insurance documentation was written in Spanish, and despite Watts' claim that it was for vehicles used by Pearl Transit drivers under the Contract, the policy appears to be for one blue Mercedes located in Colombia.

24. Following the call on February 18, 2025, and in response to NYSOSC asking for more backup documentation, Watts provided NYSOSC with online access to Pearl Transit's internal database. A review of the database showed most of the same documents that were previously provided but in web form. The database showed IRS Forms W-4 with different spellings of certain employees' names from what was previously provided on the "Direct Deposit Issued" pay receipts. Additionally, a review of the Social Security Numbers shown on the IRS Forms W-4 showed that at least three individuals' Social Security Numbers did not trace back to the correct names when checking this information using the software tool Accurint.

25. On April 28, 2025, Watts participated in a second telephone call that was recorded. Following this call, Pearl Transit provided NYSOSC with additional access to its database because the initial documents from the database did not contain all the information requested. NYSOSC was able to obtain information related to the clients or ride recipients of Pearl Transit. The information provided by Pearl Transit and Watts, to support Voucher #1, showed that 167 people received rides from Pearl Transit. This information also sometimes included a phone number, address, date of birth, disability status, and/or other information. Investigators attempted to contact all 167 people and discovered the following:

- a. Of the 167 people that Pearl Transit listed as clients in its supporting documentation, Pearl Transit provided phone numbers for 152. Of the 152 listed clients with phone numbers, the telephone numbers for 72 people were not valid

        numbers – they were either not in service or the wrong numbers – and 57 people were unable to be identified as there was no answer when called. Investigators then used the other information such as date of birth and address to locate a valid number.

    b. Of the 167 people listed as Pearl Transit clients, investigators were able to contact 43, either using the phone number provided or obtained through records searches as described above. None of the 43 individuals identified as clients had heard of Pearl Transit and no one said they were provided with transportation by Pearl Transit or Watts.

    c. Of the 167 Pearl Transit clients, investigators determined that two of them were actually deceased when Pearl Transit stated it provided them with transportation services.

The supporting documentation provided by Watts and Pearl Transit could not support any transportation of the disabled and elderly during the period covered by the Contract.

    26.    On or about June 12, 2025, Watts participated in a video teleconference with members of NYSOSC; this teleconference was recorded. Watts was identified using her New Jersey State driver's license picture. During this call Watts stated the following:

    a. Watts is eager to resolve the issues with NYSOSC to get reimbursement.

    b. Watts currently resides in southern New Jersey and that is where she was during the teleconference.

    27.    Based on the foregoing there is probable cause to conclude that Watts has committed wire fraud in violation of 18 U.S.C. §1343 by, among other things, sending multiple emails and other electronic submissions with the above-noted supporting documentation to

NYSDOT and NYSOSC to support Voucher #1, as part of a fraudulent scheme to seek hundreds of thousands of dollars from New York State for transportation services that her company, Pearl Transit, has never provided.

## Conclusion

28. Based on the foregoing, I respectfully submit that this affidavit establishes probable cause for a criminal complaint charging Jael Watts with wire fraud committed in violation of 18 U.S.C. § 1343.

Attested to by the affiant:

_____
Todd Collins
Special Agent
United States Department of Transportation,
Office of Inspector General

I, the Honorable Daniel J. Stewart, United States Magistrate Judge, hereby acknowledge that this affidavit was attested by the affiant by telephone on July 18, 2025, in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

_____
Hon. Daniel J. Stewart
United States Magistrate Judge